2026-117

**UNITED STATES COURT OF APPEALS**

**FOR THE FEDERAL CIRCUIT**

**IN RE TESSELL, INC.,**
*Petitioner*.

Petition for a Writ of Mandamus to the
Director of the United States Patent and Trademark Office,
in Patent Trial and Appeal Board Nos. IPR2025-00298, IPR2025-00322,
IPR2025-00732, and IPR2025-00733

**CORRECTED**
***AMICUS CURIAE* BRIEF**
**OF TEODOR HOLMBERG**
**IN SUPPORT OF**
**TESSELL'S**
**PETITION FOR A WRIT OF MANDAMUS**

Teodor J. Holmberg
8 Gregory Lane
Florence, MA 01062
(401) 225-4538

*Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-117

**Short Case Caption** In re Tessell, Inc.

**Filing Party/Entity** Teodor Holmberg/movant (amicus curiae)

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/05/2026 Signature: /s/ Teodor Holmberg

Name: Teodor Holmberg

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Teodor Holmberg | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Table of Authorities ........ iii

Identity of *Amicus Curiae* ........ vi

Table of Abbreviations ........ viii

Argument ........ 1

I. SUMMARY/INTRODUCTION ........ 1

II. BACKGROUND ........ 4

A. §314(d)'s preclusion shields *only* the §314(a) "threshold" determination from judicial review ........ 4

(1) This court's *en banc Wi Fi One* decision ........ 5

(2) The Supreme Court's *SAS Institute* agrees with *Wi Fi One* ........ 6

(3) *Thryv* overturns *Wi Fi One* (and *SAS Institute* in all but name) ........ 8

(4) *Apple v. Vidal* follows *Thryv* ........ 11

B. Under *Loper Bright*, the PTO does not have the discretion to consider "unfair dealings" when denying an IPR petition ........ 14

C. The 3/26/25 DD Memo created new "DD" bifurcated procedure ........ 20

D. Tessell's IPR petitions were "discretionarily denied" for "unfair dealings" under the 3/26/25 DD Memo ........ 20

III. MANDAMUS SHOULD BE GRANTED ........ 21

A. Tessell has a "clear and undisputable right" to the vacatur of the 3/26/25 DD Memo for enabling IPR petition denials based on "unfair dealings" ........ 21

B. The Federal Circuit's own precedential Catch-22 prevents Tessell from obtaining relief elsewhere. ........ 22

C. Mandamus is appropriate considering, *inter alia*, … ........ 23

(1) … this court has recognized the need to re-visit the PTO's IPR regulations under *Loper Bright* ........ 23

(2) … resolution of these DD issues would be helpful for "proper *agency* administration"—a narrow exception to the mandamus standard ........ 25

IV. PROPOSED/POSSIBLE ISSUES TO RESOLVE .................................. 28

A. Is the judicial expansion of §314(d)'s preclusive shield to cover all PTO instructions regarding IPR institution decisions still supportable under the new *Loper Bright* lack of deference standard? ........................................ 28

B. Under *Loper Bright*, should §314(d)'s scope be limited to the §314(a) "threshold" determination, *a la* this court's *en banc Wi Fi One* decision (which was overturned under the old *Chevron* deference standard)? ........ 28

C. Under *Loper Bright*, does the PTO have the statutory authority to make its own rules for denying IPR petitions based on, *e.g*., "unfair dealings?" .... 28

D. Considering (A)-(C), should the 3/26/25 DD Memo be set aside as "not in accordance with the law" under 5 U.S.C. §706(2)(A) and/or "in excess of statutory … authority" under 5 U.S.C. §706(2)(C)? ................................ 28

Conclusion ........................................................................................ 29

Certificate of Compliance with Type-Volume Limits ........................................ c

ADDENDUM

*35 U.S.C. 311 – Inter partes review.* ........................................................ A-1

*35 U.S.C. 312 – Petitions.* ........................................................................ A-1

*35 U.S.C. 313 – Preliminary response.* ...................................................... A-2

*35 U.S.C. 314 – Institution of inter partes review.* ........................................ A-2

*35 U.S.C. 315 – Relation to other proceedings or actions.* ............................. A-3

*35 U.S.C. 316 – Conduct of inter partes review.* .......................................... A-4

37 CFR 42.108 – Institution of *inter partes* review ........................................ A-7

Proposed new subsections 37 C.F.R. 42.108(d)-(g) ........................................ A-7

# TABLE OF AUTHORITIES

## Cases

*Apple v. Vidal*,
63 F.4th 1 (Fed. Cir. 2023) ........ passim

*Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*,
467 U. S. 837 (1984). ........ 1

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016) ........ 3, 7, 12, 25

*In re BP Lubricants USA Inc.*,
637 F. 3d 1307 (Fed. Cir. 2011) ........ 26

*In re Cray Inc.*,
871 F. 3d 1355 (Fed. Cir. 2017) ........ 26

*In re Micron Tech., Inc.*,
875 F. 3d 1091 (Fed. Cir. 2017) ........ 26

*In re Motorola Solutions, Inc.*,
__ F. 4th __, 2025 WL 3096514 (Fed. Cir. Nov. 6, 2025). ........ 3, 22

*In re Oath Holdings Inc.*,
908 F 3d 301 (Fed. Cir. 2018) ........ 26

*In re Power Integrations, Inc.*,
899 F.3d 1316 (Fed. Cir. 2022) ........ 3

*In re Queen's Univ. at Kingston*,
820 F. 3d 1287 (Fed. Cir. 2016) ........ 27

*In re Stingray IP Sols.*,
__ F. 4th __ (Fed. Cir. 2023) ........ 25, 26

*In re ZTE (USA) Inc.*,
890 F. 3d 1008 (Fed. Cir. 2018) ........ 26

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ........ passim

*Mallard v. U. S. Dist. Court for S. Dist. of Iowa*,
490 U.S. 296 (1989) ........ 3, 22

*Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*,
989 F.3d 1375 (Fed. Cir. 2021) ........ 2, 4, 21, 23

TC Heartland LLC v. Kraft Foods Grp. Brands LLC,
581 U.S. 258 (2017) ........ 26

*Thryv, Inc. v. Click-to-call Techs.*,
590 U.S. 45 (2020) ........ passim
*United States v. Arthrex, Inc.*,
141 S.Ct. 1970 (2021) ........ 12
*Wi Fi One, LLC v. Broadcom Corp.*,
878 F. 3d 1364 (2018) (*en banc*) ........ 1, 5

**Statutes**

35 U.S.C. §313 ........ 15, 16
35 U.S.C. §314(a) ........ passim
35 U.S.C. §314(d) ........ passim
35 U.S.C. §315(a) ........ 13, 16
35 U.S.C. §315(b) ........ passim
35 U.S.C. §316(a)(1) ........ 16
35 U.S.C. §316(a)(10) ........ 16
35 U.S.C. §316(a)(11) ........ 16, 18
35 U.S.C. §316(a)(12) ........ 16
35 U.S.C. §316(a)(13) ........ 16
35 U.S.C. §316(a)(2) ........ 16, 17, 24
35 U.S.C. §316(a)(4) ........ 16, 17, 18, 24
35 U.S.C. §316(a)(5) ........ 16
35 U.S.C. §316(a)(7) ........ 16
35 U.S.C. §316(a)(8) ........ 16
35 U.S.C. §316(a)(9) ........ 16
35 U.S.C. §316(d) ........ 16
35 U.S.C. §318(a) ........ 7
5 U.S.C. §706 ........ 6, 24, 27
5 U.S.C. §706(2)(A) ........ 22
5 U.S.C. §706(2)(C) ........ 22

***PLEASE NOTE:*** 35 U.S.C. §§311-316 are reproduced in their entirety in the attached ADDENDUM.

## Code of Federal Regulations (C.F.R.)

37 C.F.R. §42.108(a) .......... 6, 7

## Federal Register

77 Fed. Reg. 6868 (Feb. 9, 2012) .......... 19
90 Fed. Reg. 48335 (Oct. 17, 2025) .......... 7

## **IDENTITY OF *AMICUS CURIAE***

Pursuant to Fed. R. App. P. 29(a)(4)(D), I hereby provide a concise statement of my identity. I am a patent practitioner of over 25 years' experience, a member of the patent bar (Reg. No. 50,140), a member of the Bars of Massachusetts and New York, and, of course, a member of the bar of the Federal Circuit Court of Appeals. I have been involved in patent litigation all over the United States and written over at least 200 patents.

Pursuant to Fed. R. App. P. 29(a)(4)(D), I hereby provide a concise statement of my interest in the case. My interest here is for the rules: all of us have to follow them, including the PTO. As discussed in the brief, I believe the Supreme Court's *Loper Bright* decision[*] requires a re-evaluation of *Apple v. Vidal*'s[**] expansion of §314(d)'s preclusion of judicial review to cover all PTO instructions regarding IPR institution decisions.

Pursuant to Fed. R. App. P. 29(a)(4)(D), I hereby provide a concise statement of the source of my authority to file. This is being submitted as an attachment to a motion for **leave** from the court under Fed. R. App. P. 29(a)(2) such that a statement of consent or opposition under Fed. Cir. R. 27(a)(2) is not required and thus neither sought nor obtained.

---

* *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).
** *Apple v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023).

Pursuant to Fed. R. App. P. 29(a)(4)(E), I hereby attest that:

(i) I have authored this brief in whole;

(ii) no party or party's counsel has contributed money that was intended to fund preparing/submitting this brief; and

(iii) no other person besides myself has contributed money that was intended to fund preparing/submitting this brief.

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| AIA | Leahy-Smith America Invents Act, Public Law 112-29, 125 Stat. §§284-341, enacted at various places in the U.S.C., most relevantly at 35 U.S.C. §§311-319, concerning IPRs |
| AIA trials | refers to the 3 forms of after-grant review established by the AIA: IPR, PGR, and the now-defunct CBM |
| APA | Administrative Procedures Act |
| Ex. ___ | Tessell's Exhibits [ECF Docket No. 02, starting at page 39] |
| DD | Discretionary Denial, a denial of IPR institution made by the Director in accordance with the 3/26/25 DD Memo |
| Director | Generally, whoever was Director or Acting Director of the PTO at the time (presently, Director John Squires) |
| IPR | Inter Partes Review, at 35 U.S.C. §§311-319 (Chapter 31) |
| IPR institution | refers only to the initial review of the IPR petition to determine whether to grant it under 35 U.S.C. §314(a) (not to any of the proceedings once the IPR is instituted) |
| 3/26/25 DD Memo | March 26, 2025 Memorandum from Coke Morgan Stewart, Acting PTO Director, to all PTAB judges, entitled "Interim Processes for PTAB Workload Management," in the Exhibits as Ex. E [ECF 02 at pp. 85-88]. |
| PGR | Post-Grant Review, at 35 U.S.C. §§321-329 (Chapter 32) |
| PTAB | Patent Trial and Appeal Board |
| PTO | United States Patent & Trademark Office |

# ARGUMENT

## I. SUMMARY/INTRODUCTION

Besides meeting the 3 conditions for mandamus (see further below), this petition should be granted because:

***First***, *Chevron*[1] deference is dead and this court's current deference to the PTO by shielding the Director's IPR institution instructions from judicial review is no longer supportable under the new *Loper Bright*[2] **lack of** deference. Under precedents taking a *Chevron* deferential approach, §314(d) has been expanded far beyond its express bounds, thereby allowing the Director to do whatever he wants when denying IPR petitions. This court should re-visit those precedents under the *Loper Bright* lack of deference.

***Second***, the proper scope of §314(d)'s preclusion of judicial review is limited to the §314(a) "threshold" determination, as this court found in its *en banc Wi Fi One* decision,[3] which was overturned by the pre-*Loper Bright* Supreme Court case

---

[1] *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

[2] *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 411 (2024) ("*Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.").

[3] *Wi Fi One, LLC v. Broadcom Corp*., 878 F.3d 1364, 1372 (2018) (*en banc*), overruled by *Thryv*.

*Thryv*.[4] I respectfully submit that *Thryv* and *Apple v. Vidal*,[5] the two cases that expanded §314(d)'s scope to cover practically everything, are no longer good law under the *Loper Bright* lack of deference. Thus, §314(d) does not preclude this court from granting the writ of mandamus.

***Third***, the PTO does not have the statutory authority to consider the "unfair dealings" of IPR petitioners when denying an IPR petition. Under *Loper Bright*, the PTO's discretion can only be exercised where Congress expressly granted the PTO the authority to exercise such discretion. Congress did not give the Director the authority to create his own grounds for denying an IPR petition under §314.

***Fourth***, the 3/26/25 DD Memo[6] established rules/procedures under which an IPR petition may be denied ***based on*** any "discretionary considerations" the Director feels like considering (which, for Tessell's IPR petitions, was "unfair dealings").

***Accordingly***, Tessell has a "clear and indisputable right"[7] to the vacatur of the 3/26/25 DD Memo under which Tessell's IPR petitions were denied, as the 3/26/25

---

[4] *Thryv, Inc. v. Click-to-call Techs.*, 590 U.S. 45 (2020).

[5] *Apple v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023) *cert. denied*, *sub nom. Intel Corp. v. Vidal*, 144 S. Ct. 548 (2024).

[6] March 26, 2025 Memorandum entitled "Interim Processes for PTAB Workload Management" (hereinafter, "the 3/26/25 DD Memo"). Ex. E to Petition [ECF 02, pp. 85-89].

[7] *Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1378 (Fed. Cir. 2021), listing the 1st of 3 conditions for mandamus.

DD Memo was an "action by the agency beyond its statutory limits"—a specific instance which may require mandamus review "in response to action by the agency relating to the non-institution of inter partes review."[8] This is **not** an attempt to "get around" §314(d)'s prohibition of judicial review, but rather is a petition for this court to ***command*** the PTO to ***vacate*** the 3/26/25 DD Memo for allowing the PTO to consider "unfair dealings"—a consideration for which the PTO has no statutory authority to consider.

Tessell "lack[s] adequate alternative means to obtain the relief"[9] because of a legal Catch-22 this court has created. Namely, in *Motorola*,[10] this court did not grant mandamus because the IPR petitioners could seek APA relief in a federal district court; however, in *Apple v. Vidal*, this court held that §314(d) prohibits a federal district court from reviewing substantive instructions like the 3/26/25 DD Memo. Thus, Tessell is stuck in a Catch-22 where it cannot seek relief in the Federal Circuit because of the availability of district court, and it cannot seek relief in district court because this court said a district court cannot consider the argument.

---

[8] *In re Power Integrations, Inc.*, 899 F.3d 1316, 1321 (Fed. Cir. 2022), discussing *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016).

[9] *Mallard v. U. S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989), listing another of the 3 conditions for a writ of mandamus.

[10] *In re Motorola Solutions, Inc.*, __ F. 4th __ (Fed. Cir. 2025).

Tessell must "convince the court that the writ is appropriate under the circumstances" as the third and final condition for mandamus.[11] Mandamus is appropriate because:

- this court has recognized the need to review the PTO's IPR rulemaking authority under *Loper Bright*; and
- the current situation fits the proposed narrow "proper agency administration" exception to mandamus's strict standards (similar to the "proper judicial administration" exception).

## II. BACKGROUND

### A. §314(d)'s preclusion shields ***only*** the §314(a) "threshold" determination from judicial review

35 U.S.C. §314(d) states that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." Under *Loper Bright*, this statute should mean just what it says. As explained by this court in *Wi Fi One*, the "determination by the Director whether to institute an [IPR] under this section" refers to the §314(a) "threshold" determination as the only substantive determination in §314 ("this section"), and thus §314(d)'s protection is limited to §314(a)'s "threshold" determination.

---

[11] *Mylan*, 989 F.3d at 1378.

### (1) This court's *en banc Wi Fi One* decision

*Wi Fi One* started with a disagreement about whether the IPR petitioner was in privity with the defendants of a previous lawsuit on the same patent, which would mean that §315(b) barred the IPR petition.[12] The patent owner wanted to do discovery on the issue, which the PTO denied, and the IPR was instituted. After the IPR FWD, the patent owner appealed to this court, arguing that the PTO's §315(b) determination should be reversed or vacated. A Federal Circuit panel had previously found that §314(d) barred judicial review of the PTO's §315(b) decision.[13]

In *Wi Fi One*, this court *en banc* adopted an appropriately high bar for when to defer to the PTO: "In view of this strong presumption [for judicial review], we will abdicate judicial review ***only*** when Congress provides a "clear and convincing" indication that it intends to prohibit review."[14] Because there was "no clear and convincing indication in the specific statutory language in the AIA, the specific legislative history of the AIA, or the statutory scheme as a whole that demonstrates Congress's intent to bar judicial review of §315(b) time-bar determinations," this court did not allow §314(d) to block their review of the PTO's time-bar determination.

---

[12] *Wi Fi One*, 878 F. 3d at 1370.

[13] *Id.* at 1371.

[14] *Id.* at 1372 (emphasis added).

This is the *Loper Bright* approach: the "*courts* must 'decide all relevant questions of law.'"[15] This court continued:

> Starting with the statutory language, §314(d) provides that "[t]he determination by the Director whether to institute an inter partes review *under this section* shall be final and unappealable." (emphasis added). The natural reading of the statute limits the reach of §314(d) to the determination by the Director whether to institute IPR as set forth in §314 … [and more specifically to] … [s]ubsection (a) of §314—the only subsection addressing substantive issues that are part of the Director's determination "under this section" …[16]

The approach in *Wi Fi One* is the most appropriate under the *Loper Bright* lack of deference standard: §314(d)'s prohibition is limited to the §314(a) "threshold" determination.

**(2) The Supreme Court's *SAS Institute* agrees with *Wi Fi One***

*SAS Institute*[17] is a pre-*Loper Bright* Supreme Court case which provides a preview of how the Supreme Court might take a *Loper Bright* approach to the PTO's recent IPR institution rules. In *SAS Institute*, the PTO had promulgated 37 CFR §42.108(a) which allowed the PTO to institute an IPR on less than all of the claims challenged in the IPR petition—a so-called "partial institution." An unhappy IPR petitioner of a partial institution challenged §42.108(a) on statutory grounds, *i.e.*,

[15] *Loper Bright*, 630 U.S. at 390 (emphasis in original) (quoting 5 U.S.C. §706).

[16] *Wi Fi One*, 878 F. 3d at 1372.

[17] *SAS Institute, Inc. v. Iancu*, 584 U.S. 357 (2018).

because §318(a) states that the PTO "shall issue a [FWD] with respect to ***any*** patent claim challenged by the petitioner …" (emphasis added) and, thus, all of the claims in the IPR petition must be reviewed.

The PTO argued that *Cuozzo*[18] and §314(d) prevented any "judicial review of any legal question bearing on the institution of inter partes review—including whether the statute permits [the PTO's] 'partial institution' practice."[19] The Court in *SAS Institute* brushed those concerns aside and effectively struck down §42.108(a) as an agency action beyond statutory authority, stating that "the plain text of §318(a) supplies a ready answer. … *any patent claim challenged by the petitioner* … means that the Board *must* address *every* claim the petitioner has challenged."[20] This is the *Loper Bright* approach: the courts decide what the law is, starting with the language of the statute, and without any deference to the agency's interpretation, even when there may be ambiguity.

In response to the PTO's argument that *Cuozzo* effectively expanded §314(d) beyond §314(a) to cover §315(b), the Court stated "*Cuozzo* concluded that §314(d) precludes judicial review **<u>only</u>** of the Director's 'initial determination' under §314(a)

---

[18] *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016).

[19] *SAS Institute*, 584 U.S. at __ (Gorsuch, J.) (slip op., p. 12).

[20] *Id.*, (Gorsuch, J.) (slip op., pp. 4-5) (emphasis in the original).

that 'there is a 'reasonable likelihood' that the claims are unpatentable on the grounds asserted'" and judicial "review is therefore justified."[21]

### (3) *Thryv* overturns *Wi Fi One* (and *SAS Institute* in all but name)

Sometimes two precedents simply contradict each other, even though both cases are on point and one did not explicitly over-rule the other. *SAS Institute* and *Thryv* are an example of this, as noted by the dissent. *Thryv* expanded the reach of §314(d)'s prohibition beyond §314(a)'s "threshold" determination, thereby overturning *Wi Fi One*[22] and establishing the precedent upon which §314(d)'s present expansion depends. As explained below, the *Thryv* expansion is not likely to survive a second look under the *Loper Bright* lack of deference standard.

In *Thryv*, the patent owner had filed a lawsuit in 2001 against the IPR petitioner which was subsequently voluntarily dismissed without prejudice.[23] ***Twelve years later***, the IPR petition was filed, and the patent owner challenged the IPR petition on the basis of §315(b)'s 1-year time limit. The PTO decided §315(b) didn't apply to lawsuits which were dismissed without prejudice, and instituted the

---

[21] *Id.*, (Gorsuch, J.) (emphasis added).

[22] *Thryv*, 590 U.S. at __ (Ginsburg, J.) (slip op., p. 4).

[23] This is a simplification for convenience: the previous lawsuit had been brought by a licensee of the patent owner against a previous incarnation of 1 of 4 IPR petitioners.

IPR proceeding, in which many of the patent claims were cancelled. The patent owner appealed, challenging the PTO's decision regarding §315(b)'s time limit.

A *Loper Bright* analysis[24] begins with the statute itself, *i.e.,* §315(b): "An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner … is served with a complaint alleging infringement of the patent." The wording of §315(b) is clear: if a patent infringement complaint was filed against a party, that party must file an IPR petition within a year or give up the right to file such a petition. The Director has no discretion besides simply ministerially applying §315(b).

By contrast, the Court in *Thryv* did not start with the wording of §315(b), but rather with an analysis of *Cuozzo*'s discussion of §314(d) and whether it required §314(d)'s expansion to cover §315(b).[25] In other words, the Supreme Court interpreted the wording of *Cuozzo*—not the wording of the statute itself—as requiring §314(d)'s prohibition be extended to decisions about §315(b): "We need not venture beyond *Cuozzo*'s holding that §314(d) bars review at least of matters 'closely tied to the application and interpretation of statures related to' the institution

---

[24] *Loper Bright*, 630 U.S. at 392 ("Under the APA, it thus remains the responsibility of the court to decide whether the law means what the agency says.") (punctuation omitted).

[25] *Thryv*, 590 U.S. at __ (Ginsburg, J.) (slip op., p. 6).

decision …, for a §315(b) challenge easily meets that measurement.”[26] The Court rejected the idea that §314(d)’s scope was limited to the §314(a) “threshold determination.[27]

The dissent in *Thryv* noted the ruling contradicted *SAS Institute*.[28] In the dissent’s view, *SAS Institute* ruled that §314(d) was limited to “the Director’s initial determination under §314(a).”[29] Accordingly, *stare decisis* demanded a different outcome (such as an explicit over-ruling of *SAS Institute*), but instead the “majority quibbles with a few sentences [about *SAS Institute*] and quietly walks away.”[30] Because of this, future litigants and lower courts will be left with the question: “Whether [§314(d)] is limited to the §314(a) determination (as *SAS Institute* held and parts of *Cuozzo* suggested) or also reaches to challenges in ‘closely related’ statutes (as other parts of *Cuozzo* suggested and the Court insists today)—who can say?”[31]

---

[26] *Id*., (slip op., p. 7) (Ginsburg, J.).

[27] *Id*., (slip op., pp. 7, 8) (Ginsburg, J.). The Court argued that the phrase “under this section” in §314(d) referred to the entirety of Chapter 31. A better reading is that “under this section” means just §314 and, as pointed out in *Wi Fi One*, the only substantive determination in §314 is §314(a)’s “threshold” determination.

[28] *Id*., (slip op., dissent, p. 16) (Gorsuch, J.).

[29] *Id*., (slip op., dissent, p. 17) (Gorsuch, J.).

[30] *Id*.

[31] *Id*., (slip op., dissent, pp. 17-18) (Gorsuch, J.).

The likely result of a *Loper Bright* re-consideration of *Thryv* is indicated by the following paragraph from the dissent (emphasis in original):

> It's a rough day when a decision manages to defy the plain language of a statute, our interpretive presumptions, *and* our precedent. But today that's not the worst of it. The Court's expansive reading of §314(d) takes us further down the road of handing over judicial powers involving the disposition of individual rights to executive agency officials.[32]

Under the *Loper Bright* lack of deference, *Thryv* is wrong and *Wi Fi One* and *SAS Institute* are right. As the dissent in *Thryv* feared, the PTO took what was intended to be a shield protecting the §314(a) "threshold" determination and has turned it into a sword for cutting down IPR petitions at the Director's whim.

**(4) *Apple v. Vidal* follows *Thryv***

*Apple v. Vidal* expanded *Thryv* so that any PTO instructions regarding IPR institution are protected from judicial review by §314(d).[33] Apple had challenged, under the APA, two precedential PTAB decisions which established a 6 factor test for considering parallel court proceedings when deciding whether to institute an IPR (*i.e.*, the *NHK-Fintiv* rules). This court recognized that Apple was not challenging the denial of a specific IPR petition, but rather "the Director's instructions to the Board, as delegatee, regarding how to exercise the Director's institution

---

[32] *Id.*, (slip op., dissent, p. 18) (Gorsuch, J.).

[33] *Apple v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023) (slip op., p. 17).

discretion."[34] After discussing *Cuozzo*, *SAS Institute*, *Thryv*,[35] and *Arthrex*,[36] this court found that any challenge to the content of such instructions was prohibited by §314(d): "we conclude the IPR statute's preclusion of review, as now settled by the Supreme Court based on statutory text, legislative history, and structure, must encompass preclusion of review of the content-focused challenges to the instructions at issue here."[37]

Under *Loper Bright* scrutiny, one problem with *Apple v. Vidal* is immediately apparent: what statute empowered the PTO to make its own IPR institution rules regarding parallel court proceedings?[38] Instead of finding any such grant of authority, this court found the PTO's power in the fact that Congress did ***not*** say otherwise: "Congress enacted no provision for this scenario that directs the court to stay its case in light of a pending request for IPR or an instituted IPR. Nor did Congress enact a provision prescribing how the Director is to address such an

---

[34] *Id.*, (slip op., p. 17).

[35] *Apple v. Vidal* cites *Thryv* 14 times.

[36] *United States v. Arthrex, Inc.*, 141 S.Ct. 1970 (2021).

[37] *Apple v. Vidal*, 63 F.4th at __ (slip op., p. 7).

[38] *Loper Bright*, 630 U.S. at 406 ("At best our *Chevron* doctrine has been nothing more than a distraction from the question that matters: *Does the Statute authorize the challenged agency action?*") (emphasis added).

overlapping pending court case in exercising the discretion whether to institute an IPR."[39]

An argument for agency power from statutory silence will not survive scrutiny under *Loper Bright*.[40] Moreover, Congress was not silent: to the extent Congress wanted parallel court proceedings to affect the grant or denial of an IPR petition, Congress spelled it out in §§315(a) and (b). Since Congress explicitly gave the PTO the discretion to consider related ***PTO*** proceedings when denying an IPR petition in §315(d) and §325(d),[41] the presumption from Congress's silence must be that Congress did ***not*** intend the PTO to consider parallel court proceedings (besides ministerially applying §§315(a)/(b)). Under *Loper Bright*, Congress's silence ends the inquiry: the PTO has no discretion to consider parallel court proceedings when denying an IPR petition (besides ministerially applying §315(a)/(b)).

However, for purposes of the present petition, this court need not re-consider whether the PTO may consider parallel court proceedings when denying an IPR petition. In the present case, all that needs to be re-visited is the ***absolute*** nature of

---

[39] *Apple v. Vidal*, 63 F.4th at __ (slip op., p. 7).

[40] *Loper Bright*, 630 U.S. at 400 ("Of course, when faced with a statutory ambiguity in such a case, the ambiguity is ***not*** a delegation to anybody, …") (emphasis added).

[41] §325(d), last sentence: "In determining whether to institute or order a proceeding under … chapter 31 [*i.e.,* IPRs], the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office."

this court's conclusion that "the IPR statute's preclusion of review … must encompass preclusion of review of the content-focused challenges to the instructions at issue here."[42] I respectfully submit that, for purposes of the instant petition, the change in position brought about by *Loper Bright* necessarily limits *Thryv* and thus necessarily effects the scope of §314(d)'s preclusion as set forth in *Apple v. Vidal*. *Loper Bright* has sufficiently changed the precedential foundations of *Apple v. Vidal* that this court should grant mandamus in order to consider whether the PTO's instructions which allow an IPR denial based on "unfair dealings" are still precluded from judicial review by §314(d).

### B. Under *Loper Bright*, the PTO does not have the discretion to consider "unfair dealings" when denying an IPR petition

The PTO is limited to the explicit statutory delegations of authority/discretion as interpreted by the courts. As stated in *Loper Bright*, "[w]hen the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits. The court fulfills

[42] *Apple v. Vidal*, 63 F.4th at __ (slip op., p. 7).

that role by recognizing constitutional delegations, 'fix[ing] the boundaries of [the] delegated authority.'"[43]

In every instance, the IPR statute explicitly circumscribes the PTO's scope of discretion to ***within*** the IPR statute and/or ***within*** the PTO. For example, §315(c) gives the Director the authority to join together different IPRs; §315(d) gives the Director the discretion to "determine the manner in which" the IPR and any other related PTO "proceeding or matter may proceed;" and §325(d) gives the Director the discretion to consider related PTO proceedings when granting or denying an IPR petition.[44] No statutory provision gives the Director the authority to create his own considerations—such as "unfair dealings"—for the IPR institution decision under §314.

Reminders of the limits of the Director's discretion are inserted throughout the statutory framework. For example, the patent owner's preliminary response during the institution phase must be "based upon the failure of the petition to meet any requirement ***of this chapter***" under §313 (emphasis added). Thus, a patent

---

[43] *Loper Bright*, 630 U.S. at 395.

[44] See §325(d), last sentence: "In determining **whether to institute** or order a proceeding under this chapter, chapter 30, or chapter 31, **the Director may take into account** whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." (emphasis added). Unlike the first sentence of §325(d), which applies only to PGRs, the last sentence applies to *ex parte* reexaminations (Chapter 30), IPRs (Chapter 31), and PGRs ("this chapter").

owner may oppose an IPR petition by bringing up the fact the IPR petitioner has filed a declaratory judgment regarding the patent's validity (under §315(a)(1)) or the fact the patent owner filed a lawsuit more than one year before the IPR petition (under §315(b)).

Congress gave the Director rule-making authority for IPRs in a long list of areas/subjects in §316(a). As discussed below, §§316(a)(2) and (a)(4) give the Director the broadest rule-making authority and both are explicitly limited in scope. The remainder concern the minutiae of having a public trial-like procedure: §316(a)(1) concerns making the IPR file publicly available; §316(a)(5) gives the Director authority to make rules about discovery; §316(a)(6) rules for discovery sanctions; §316(a)(7) rules for protective orders; §316(a)(8) rules for the patent owner's response under §313; §316(a)(9) rules for how the patent owner can amend under §316(d); and §316(a)(11) rules for requiring the FWD to issue in a year (extendible by 6 months). §§316(a)(10), (12), and (13) are so picayune they're not worth mentioning.

Why would Congress go through the trouble of spelling out the minutiae of the Director's rule-making authority for an IPR trial but not mention the Director's rule-making authority to *independently add his own considerations* when considering an IPR institution decision?

35 U.S.C. §§316(a)(2), (a)(4), and (b) are reproduced below:

> ***35 U.S.C. 316 – Conduct of inter partes review.***
> (a) REGULATIONS.—The Director shall prescribe regulations —
> …
> (2) setting forth standards for the showing of sufficient grounds to institute a review under section 314(a);
> …
> (4) establishing and governing inter partes review under this chapter and the relationship of such review to other proceedings under this title;
> …
> (b) CONSIDERATIONS.—In prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.

Under §316(a)(2), the Director can make rules "setting forth standards for the showing of sufficient grounds to institute a review ***under section §314(a)***" (emphasis added). The Director's rule-making authority regarding the IPR institution process is limited to the §314(a) "threshold" determination—specifically, the "standards for the showing of sufficient grounds" for the invalidity challenges. As written, this is a very limited power. Only *Thryv* can possibly explain how we have gotten so far beyond these words. Congress did not give the Director the authority to independently define his own sufficient grounds, as the Director has done in the 3/26/25 DD Memo.

Under §316(a)(4), the Director can make rules "establishing and governing [IPR] ***under this chapter*** and the relationship of such review to other proceedings ***under this title***" (emphasis added). This rule-making power is limited to where there

is explicit statutory authority for the Director to exercise his authority and/or discretion. Congress allowed the PTO to make IPR rules under Chapter 31, *i.e.*, §§311-319, such as rules for joinder under §315(c), rules for one or more related PTO proceedings under §315(d), and rules for IPR-based estoppel under §315(e)(1). The PTO also has the power to make rules governing "the relationship" of IPR proceedings to other ***PTO*** proceedings (*i.e.*, proceedings under Title 35), such as rules under §325(d) for denying an IPR petition when "the same or substantially the same prior art or arguments previously were presented to the Office."

If Congress intended the Director to have the power to independently create his own discretionary considerations for denying IPR petitions, why didn't Congress explicitly grant the Director the rule-making authority to do so?

In §316(b), Congress gave the Director the discretion to consider "the efficient administration of the Office" and "the ability of the Office to timely complete" IPR proceedings when making any of the rules in §316(a). Thus, the PTO has the authority to make a rule for denying IPR petitions based on the PTO workload under §316(a)(4) and §316(b) or based on the PTO's inability to complete the IPR proceeding within a year, under §316(a)(11) and §316(b). §316(b) does not give the Director the power to independently create his own discretionary considerations for denying IPR petitions.

When interpreting a statute, "the ***contemporaneous*** construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect."[45] "Such respect was thought especially warranted when an Executive Branch interpretation was issued roughly ***contemporaneously*** with the enactment of the statute … ."[46] When the PTO first enacted its rules and procedures for IPRs, the PTO knew and understood its limitations within the statutory framework, *e.g.*:

> The Board institutes the trial on behalf of the Director. Proposed §42.4(a). In instituting the trial, the Board will consider whether or not a party has satisfied the statutory institution requirements. As part of its consideration, the Board may take into account the existence of another proceeding before the Board under 35 U.S.C. 315(d), as amended, and whether the same or substantially the same prior art or arguments were previously presented to the Office under 35 U.S.C. 325(d).[47]

In listing the problems with *Chevron*, the Court in *Loper Bright* noted that "[i]t demands that courts mechanically afford *binding* deference to agency interpretations, including those that have been inconsistent over time."[48] In the present case, the PTO has strayed from its original (and correct) interpretation of the

[45] *Loper Bright*, 603 U.S. at 386 (emphasis added) (internal citations omitted). Here, the Court was describing, with approval, the historical approach before *Chevron* deference.

[46] *Id.* (emphasis added).

[47] 77 Fed. Reg. 6868 (Feb. 9, 2012), at 6874 (discussing the first rules for IPRs).

[48] *Loper Bright*, 603 U.S. at 399 (emphasis in original).

limitations built into the IPR statute and now claims an authority "under §314(a)" to promulgate any rule or procedure for the Director to deny an IPR petition on any basis. Without *Chevron* deference, the PTO simply can't do that.

### C. The 3/26/25 DD Memo created new "DD" bifurcated procedure

The 3/26/25 DD Memo described a new bifurcated procedure, under which (1) the Director may make his own "discretionary denial" (DD) of the IPR petition based on "discretionary considerations;" and (2) if the IPR petition survives the first part (*i.e.*, no DD), a 3-member PTAB panel decides whether to institute an IPR based on "[the] merits." The Director may grant a DD on almost any basis, as the list of "discretionary considerations" is open-ended and limitless.[49]

### D. Tessell's IPR petitions were "discretionarily denied" for "unfair dealings" under the 3/26/25 DD Memo

In accordance with the 3/26/25 DD Memo, the Director issued DDs in each of Tessell's 4 IPR petitions,[50] in which the reasoning was the same: based on the

---

[49] 3/26/25 DD Memo, pp. 2-3, Ex. E to Tessell's Petition [ECF 02 at pp. 87-88] (the last consideration in the bulleted list is: "[a]ny other considerations bearing on the Director's discretion.").

[50] The 8/22/25 DD of IPR2025-00298, Ex. A to Tessell's Petition [ECF 02, at pp. 42-46]; the 6/12/25 DD of IPR2025-00322, Ex. B to Tessell's Petition [ECF 02, at pp. 47-51]; and the 8/14/25 DD of IPR2025-00732 and IPR2025-00733, Ex. C to Tessell's Petition [ECF 02, at pp. 52-56].

"Patent Owner's equity arguments," "unfair dealings tip the balance to exercising discretion to deny institution."[51] Tessell's Petition discusses those alleged "unfair dealings" in detail, as well as the issues with assignor estoppel, and those matters will not be discussed here.[52]

## III. MANDAMUS SHOULD BE GRANTED

### A. Tessell has a "clear and undisputable right" to the vacatur of the 3/26/25 DD Memo for enabling IPR petition denials based on "unfair dealings"

Tessell has a "clear and indisputable right"[53] to an IPR institution decision ***based on*** the IPR statute. Generally speaking, the present petition is a request that this court, at the least, command the PTO to make the IPR institution decision as statutorily required—*i.e.*, ***without*** considering "unfair dealings." The simplest and systematically best way to achieve the goals of this petition would be to vacate the 3/26/25 DD Memo and require the PTO to promulgate new IPR institution guidelines/rules in accordance with statute.

[51] The 6/12/25 DD of IPR2025-00322, pp. 2-3, Ex. B to Tessell's Petition [ECF 02, at pp. 49-50].

[52] Tessell's Petition [ECF 02].

[53] *Mylan*, 989 F.3d at 1378.

### B. The Federal Circuit's own precedential Catch-22 prevents Tessell from obtaining relief elsewhere.

This court has created a Catch-22 which guarantees that Tessell "lack[s] adequate alternative means to obtain [] relief."[54] In the *Motorola* decision, this court did not grant mandamus on an IPR institution denial because, *inter alia*, "an APA action in federal court affords Motorola an available avenue to raise this same challenge."[55] However, the IPR institution denials at issue here were made in accordance with the 3/26/25 DD Memo, which provides instructions for IPR institution decisions. In *Apple v. Vidal*, this court held that "[i]f the congressional preclusion of review of the decision to institute is to be respected …, it must extend to the substance of such instructions"—*i.e.*, this court has ruled that §314(d)'s prohibition of judicial review extends to the "substance" of the 3/26/25 DD Memo.[56]

Thus, for example, if Tessell files an "APA action" pursuant to *Motorola* in the pending *Nutanix Inc.* case[57] asserting the 3/26/25 DD Memo instructions should be set aside under 5 U.S.C. §§706(2)(A) and/or (C), the Northern District of California will refuse to review of the "substance" of the 3/26/25 DD Memo, pursuant to *Apple v. Vidal*. If the PTO is not doing its job (*i.e.*, by ***not*** making

---

[54] *Mallard*, 490 U.S. at 309.

[55] *In re Motorola*, __ F.4d at __ (slip op., p. 10).

[56] *Apple v. Vidal*, 63 F.4th at __ (slip op., p. 18).

[57] The related case *Nutanix, Inc. v. Tessell, Inc.,* N.D.Cal. Dckt No. 24-cv-01729.

institution decisions in accordance with statute), no one and nothing else can make them do it—except the Federal Circuit by issuing this writ of mandamus.

### C. Mandamus is appropriate considering, *inter alia*, …

The third and final condition for granting a writ of mandamus is that the petitioner must "convince the court that the writ is appropriate under the circumstances."[58]

#### (1) … this court has recognized the need to re-visit the PTO's IPR regulations under *Loper Bright*

Mandamus is appropriate because this court has already recognized the need to review the PTO's rule making authority under §316(a). In footnote 2 of *Softview*, this court stated (bolding added):

> To be sure, the PTO's authority under Section 316(a)(4) is not unbounded. … Section 316(a)(4) does not grant the PTO the authority to legislate new patent laws, but rather charges it with prescribing regulations governing IPR proceedings. *See* Oral Arg. 26:00–50 (appellee conceding that the PTO does not have "unfettered" authority under section 316(a)(4)). We do not define the exact limits of this statutory provision today but narrowly determine that it authorized the PTO to promulgate section 42.73(d)(3)(i). The **task of defining the bounds of section 316(a)(4) is for a later date and to be decided on a record with briefing more dedicated to that issue** and in consideration of the Supreme Court's recent ruling in *Loper Bright Enters. v. Raimondo,* Nos. 22-451, 22-1219, (U.S. June 28, 2024).[59]

[58] *Mylan*, 989 F.3d at 1378.

**[59]** *Softview v. Apple*, 108 F. 4th 1366 (Fed. Cir. 2024) (slip op., p. 10, fn. 2).

As discussed above, §316(a)(4) is the PTO's authority to prescribe regulations for IPR generally, whereas §316(a)(2) is specifically directed to "setting forth standards for the showing of sufficient grounds to institute a review under section 314(a)"—*i.e.*, the "threshold" determination for IPR institution. I respectfully submit the time for defining the bounds of §§316(a)(2) and (4) is now. This court should grant the writ of mandamus so that the parties may prepare and submit "briefing more dedicated to that issue."

The words of *Loper Bright* itself make mandamus appropriate. The majority in *Loper Bright* believed that they were returning judicial review to where it belonged historically, *i.e.*, where "a judge was never 'bound to adopt a construction given by the head of a department.'"[60] It was 5 U.S.C. §706—the provision under which this petition seeks relief—that the Court said required *Chevron* be overturned: "*Chevron* defies the command of the APA that 'the reviewing court'—not the agency whose action it reviews—is to 'decide *all* relevant questions of law' and 'interpret … statutory provisions.' §706."[61]

[60] *Loper Bright*, 630 U.S. at 390, fn. 3 (quoting *Decatur v. Paulding*, 14 Pet. 497 (1840)).

[61] *Loper Bright*, 630 U.S. at 398 (emphasis in original); see also at 396 ("The deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA.").

*Loper Bright* refers to *Cuozzo* as the "most recent occasion" that the Supreme Court expressly "deferred to an agency interpretation under *Chevron*."[62] While I am not suggesting that *Cuozzo* and all other cases referring to *Chevron* will be, or should be, overturned on that basis,[63] this court must consider that the *Loper Bright* **lack of** deference is now the law of the land when considering this writ of mandamus.

**(2) … resolution of these DD issues would be helpful for "proper *agency* administration"—a narrow exception to the mandamus standard**

I respectfully submit that the narrow "proper judicial administration" exception for mandamus from district courts, as described below, should have a corollary "proper ***agency*** administration" narrow exception for agency action at the PTO.

In certain circumstances, this court has "provided mandamus relief under the narrow 'administration of justice' standard," under which this court "has ***not*** separately required petitioners to show satisfaction of *Cheney*'s three requirements."[64] Also referred to as the "proper judicial administration" standard,

---

[62] *Loper Bright*, 603 U.S. at 406. *Loper Bright* cites *Cuozzo* three times: the first time as an exemplar/definition for the *Chevron* deference approach (603 U.S. at 398), the second time shown above, and the third time for Justice Thomas's concurrence (603 U.S. at 404).

[63] As Roberts, C.J., said: "Mere reliance on *Chevron* cannot constitute a 'special justification' for overruling such a holding, … ." *Loper Bright,* 603 U.S. at 412.

[64] *In re Stingray IP Sols*., __ F. 4th __ (Fed. Cir. 2023), slip op., p. 4 (emphasis added).

this court has applied this narrow exception when district courts are in conflict, or district courts need supervision/instruction (on, *e.g.*, venue), or there are "basic" and/or "undecided" legal issues (based on, *e.g.*, recent Supreme Court cases).[65] "Indeed, on rare occasion, [the Federal Circuit has] granted mandamus relief without even citing the three requirements set out in *Cheney*."[66]

The "proper ***agency*** administration" narrow exception for agency action at the PTO proposed herein is based on the same logic as the "proper judicial administration" narrow exception for district courts. In this case, the basis for granting mandamus would be the change in law caused by *Loper Bright*, similar to the change in law regarding venue caused by *TC Heartland*,[67] on which basis this court granted mandamus in *In re Oath Holdings*, *In re Micron*, and *In re Cray*.

---

[65] See *In re Micron Tech., Inc.*, 875 F. 3d 1091, 1095 (Fed. Cir. 2017) (mandamus granted where "district courts' decisions … are in conflict" and "[t]his court has not addressed this fundamental and recurring issue of patent law"); *In re Cray Inc.*, 871 F. 3d 1355, 1360 (Fed. Cir. 2017) (mandamus granted where it "will further supervisory or instructional goals on an unsettled and important issue"); and *In re ZTE (USA) Inc.*, 890 F. 3d 1008, 1011 (Fed. Cir. 2018) ("This case presents two such 'basic' and 'undecided' issues relating to proper judicial administration. … These issues are likely to be repeated and present sufficiently exceptional circumstances as to be amenable to resolution via mandamus.").

[66] *In re Stingray*, __ F. 4th __ (Fed. Cir. 2023), slip op., p. 5. (citing *In re Oath Holdings Inc.*, 908 F 3d 301 (Fed. Cir. 2018) and *In re BP Lubricants USA Inc.*, 637 F. 3d 1307 (Fed. Cir. 2011)).

[67] *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017).

Another basis could be "to further supervisory and instructional goals where issues are unsettled and important."[68]

Moreover, mandamus is appropriate under the "proper agency administration" narrow exception because the mandamus petitions based on the Director's DDs are going to keep getting filed, especially as the PTO keeps taking such a large fee for doing barely any work. At a brief glance, one sees the following petitions presently pending: *In re Intel Corp.*, Fed. Cir. Dckt No. 26-113 (filed Nov. 24, 2025); *In re Kangxi Comm. Techs. (Shanghai) Co., Ltd.*, Fed. Cir. Dckt No. 26-115 (filed Nov. 24, 2025); and *In re Google, LLC*, Fed. Cir. Dckt No. 26-111 (filed Nov. 20, 2025).

Lastly, Tessell is not an unhappy litigant hoping to get the Federal Circuit to vacate a discovery order while in the middle of a trial in federal district court, which is the situation in *Cheney*, *Kerr*, and many Supreme Court mandamus cases. In the present case, the writ is to vacate an agency action beyond its statutory authority under APA §706—which is neither *that* drastic nor *that* extraordinary, particularly under *Loper Bright*.[69] In addition, as argued above, this court's own Catch-22 prevents Tessell from being able to obtain relief elsewhere.

---

[68] *In re Queen's Univ. at Kingston*, 820 F. 3d 1287, 1291 (Fed. Cir. 2016) (involving privilege and non-attorney patent agents).

[69] See *Loper Bright*, 630 U.S. at 392 ("Under the APA, it thus remains the responsibility of the court to decide whether the law means what the agency says.") (internal citations omitted).

## IV. PROPOSED/POSSIBLE ISSUES TO RESOLVE

### A. Is the judicial expansion of §314(d)'s preclusive shield to cover all PTO instructions regarding IPR institution decisions still supportable under the new *Loper Bright* lack of deference standard?

See Sect. II.A.

### B. Under *Loper Bright*, should §314(d)'s scope be limited to the §314(a) "threshold" determination, *a la* this court's *en banc Wi Fi One* decision (which was overturned under the old *Chevron* deference standard)?

See Sect. II.A.

### C. Under *Loper Bright*, does the PTO have the statutory authority to make its own rules for denying IPR petitions based on, *e.g.*, "unfair dealings?"

See Sect. II.B.

### D. Considering (A)-(C), should the 3/26/25 DD Memo be set aside as "not in accordance with the law" under 5 U.S.C. §706(2)(A) and/or "in excess of statutory … authority" under 5 U.S.C. §706(2)(C)?

See *infra*.

## CONCLUSION

Through the harm of the IPR denials, Tessell has a colorable claim for APA relief from the 3/26/25 DD Memo. Moreover, the metes and bounds of the PTO's authority under 35 U.S.C. §§316(a)(2)/(4) to promulgate regulations for IPR institution decisions need to be defined for the patentees, the petitioners, the patent bar, and, most of all, for the PTO itself.

Respectfully submitted,

January 6, 2026

By: */s/ Teodor Holmberg*

Teodor J. Holmberg
tidge@computer.org
8 Gregory Lane
Florence, MA 01062
(401) 225-4538

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-117

**Short Case Caption:** In re Tessell, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,528 words.

☐ the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

☐ the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: January 6, 2026

Signature: /s/ Teodor Holmberg

Name: Teodor Holmberg

**ADDENDUM**

***35 U.S.C. 311 – Inter partes review.***

(a) IN GENERAL.—Subject to the provisions of this chapter, a person who is not an owner of a patent may file with the Office a petition to institute an inter partes review of the patent. The Director shall establish, by regulation, fees to be paid by the person requesting the review, in such amounts as the Director determines to be reasonable, considering the aggregate costs of the review.

(b) SCOPE.—A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent inly on a ground that could be raised under section 102 and 103 and only on the basis of prior art consisting of patents and printed publications.

(c) FILING DEADLINE.—A petition for inter partes review shall be filed after the later of either—

(1) the date that is 9 months after the grant of a patent; or

(2) if a post-grant review is instituted under chapter 32, the date of the termination of such post-grant review.

***35 U.S.C. 312 – Petitions.***

(a) REQUIREMENTS OF PETITION.—A petition filed under section 311 may be considered only if—

(1) the petition is accompanied by payment of the fee established by the Director under section 311;

(2) the petition identifies all real parties in interest;

(3) the petition identifies, in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim, including—

(A) copies of patents and printed publications that the petitioner relies upon in support of the petition; and

(B) affidavits or declarations of supporting evidence and opinions, if the petitioner relies on expert opinions;

(4) the petition provides such other information as the Director may require by regulation; and

(5) the petitioner provides copies of any of the documents required under paragraphs (2), (3), and (4) to the patent owner or, if applicable, the designated representative of the patent owner.

(b) PUBLIC AVAILABILITY.—As soon as practicable after the receipt of a petition under section 311, the Director shall make the petition available to the public.

***35 U.S.C. 313 – Preliminary response.***

If an inter partes review petition is filed under section 311, the patent owner shall have the right to file a preliminary response to the petition, within a time period set by the Director, that sets forth reasons why no inter partes review should be instituted based upon the failure of the petition to meet any requirement of this chapter

***35 U.S.C. 314 – Institution of inter partes review.***

(a) THRESHOLD.—The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

(b) TIMING.— The Director shall determine whether to institute an inter partes review under this chapter pursuant to a petition filed under section 311 within 3 months after—

(1) receiving a preliminary response to the petition under section 313; or

(2) if no such preliminary response is filed, the last date on which such response may be filed.

(c) NOTICE.— The Director shall notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a), and shall make such notice available to the public as soon as practicable. Such notice shall include the date on which review shall commence.

(d) NO APPEAL.—The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.

***35 U.S.C. 315 – Relation to other proceedings or actions.***

(a) INFRINGER'S CIVIL ACTION.—

(1) INTER PARTES REVIEW BARRED BY CIVIL ACTION.— An inter partes review may not be instituted if, before the date on which the petition for such a review is filed, the petitioner or real party in interest filed a civil action challenging the validity of a claim of the patent;

(2) STAY OF CIVIL ACTION.— If the petitioner or real party in interest files a civil action challenging the validity of a claim of the patent on or after the date on which the petitioner files a petition for inter partes review of the patent, that civil action shall be automatically stayed until either—

(A) the patent owner moves the court to lift the stay;

(B) the patent owner files a civil action or counterclaim alleging that the petitioner or real party in interest has infringed the patent; or

(C) the petitioner or real party in interest moves the court to dismiss the civil action;

(3) TREATMENT OF COUNTERCLAIM.—A counterclaim challenging the validity of a claim of a patent does not constitute a civil action challenging the validity of a claim of a patent for purposes of this subsection;

(b) PATENT OWNER'S ACTION.—An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c);

(c) JOINDER.—If the Director institutes an inter partes review, the Director, in his or her discretion, may join as a party to that inter partes review any person who properly files a petition under section 311 that the Director, after receiving a preliminary response under section 313 or the expiration of the time for filing such a response, determines warrants the institution of an inter partes review under section 314;

(d) MULTIPLE PROCEEDINGS.—Notwithstanding sections 135(a), 251, and 252, and chapter 30, during the pendency of an inter partes review, if another proceeding or matter involving the patent is before the Office, the Director may determine the manner in which the inter partes review or other

proceeding or matter may proceed, including providing for stay, transfer, consolidation, or termination of any such matter or proceeding;

(e) ESTOPPEL.—

(1) PROCEEDINGS BEFORE THE OFFICE.—The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

(2) CIVIL ACTIONS AND OTHER PROCEEDINGS.—The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action arising in whole or in part under section 1338 of title 28 or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

***35 U.S.C. 316 – Conduct of inter partes review.***

(a) REGULATIONS.—The Director shall prescribe regulations —

(1) providing that the file of any proceeding under this chapter shall be made available to the public, except that any petition or document filed with the intent that it be sealed shall, if accompanied by a motion to seal, be treated as sealed pending the outcome of the ruling on the motion;

(2) setting forth standards for the showing of sufficient grounds to institute a review under section 314(a);

(3) establishing procedures for the submission of supplemental information after the petition is filed;

(4) establishing and governing inter partes review under this chapter and the relationship of such review to other proceeding under this title;

(5) setting forth standards and procedures for discovery of relevant evidence, including that such discovery shall be limited to—

(A) the deposition of witnesses submitting affidavits or declarations; and

(B) what is otherwise necessary in the interest of justice;

(6) prescribing sanctions for abuse of discovery, abuse of process, or any other improper use of the proceeding, such as to harass or to cause unnecessary delay or an unnecessary increase in the cost of the proceeding;

(7) providing for protective orders governing the exchange and submission of confidential information;

(8) providing for the filing by the patent owner of a response to the petition under section 313 after an inter partes review has been instituted, and requiring that the patent owner file with such response, through affidavits or declarations, any additional factual evidence and expert opinions on which the patent owner relies in support of the response;

(9) setting forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d) to cancel a challenged claim or propose a reasonable number of substitute claims, and ensuring that any information submitted by the patent owner in support of any amendment entered under subsection (d) is made available to the public as part of the prosecution history of the patent;

(10) providing either party with the right to an oral hearing as part of the proceeding;

(11) requiring that the final determination in an inter partes review be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months, and may adjust the time periods in this paragraph in the case of joinder under section 315(c);

(12) setting a time period for requesting joinder under section 315(c); and

(13) providing the petitioner with at least 1 opportunity to file written comments within a time period established by the Director;

(b) CONSIDERATIONS.—In prescribing regulations under this section, the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter.

(c) PATENT TRIAL AND APPEAL BOARD.—The Patent Trial and Appeal Board shall, in accordance with section 6, conduct each inter partes review instituted under this chapter.

(d) AMENDMENT OF PATENT.—

(1) IN GENERAL.— During an inter partes review instituted under this chapter, the patent owner may file 1 motion to amend the patent in 1 or more of the following ways:

(A) Cancel any challenged patent claim; and

(B) For each challenged claim, propose a reasonable number of substitute claims;

(2) ADDITIONAL MOTIONS.— Additional motions to amend may be permitted upon the joint request of the petitioner and the patent owner to materially advance the settlement of a proceeding under section 317, or as permitted by regulations prescribed by the Director;

(3) SCOPE OF CLAIMS.— An amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter;

(e) EVIDENTIARY STANDARDS.— In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.

## Code of Federal Regulations

**37 CFR 42.108 – Institution of *inter partes* review**

(a) When instituting inter partes review, the Board will authorize the review to proceed on all of the challenged claims and on all grounds of unpatentability for each claim.

(b) At any time prior to a decision on institution of *inter partes* review, the Board may deny all grounds for unpatentability for all of the challenged claims. Denial of all grounds is a Board decision not to institute *inter partes* review.

(c) *Inter partes* review shall not be instituted unless the Board decides that the information presented in the petition demonstrates that there is a reasonable likelihood that at least one of the claims challenged in the petition is unpatentable. The Board's decision will take into account a patent owner preliminary response where such a response is filed, including any testimonial evidence. A petitioner may seek leave to file a reply to the preliminary response in accordance with §§ 42.23 and 42.24(c). Any such request must make a showing of good cause.

**Proposed new subsections 37 C.F.R. 42.108(d)-(g)**
**(promulgated in 90 Fed. Reg. 48335 (Oct. 17, 2025)**)

(d) *Required stipulation for efficiency*. *Inter partes* review shall not be instituted or maintained unless each petitioner files a stipulation with the Board and any other tribunal where it is litigating or later litigates regarding the challenged patent, stating that if a trial is instituted, the petitioner and any real party in interest or privy of the petitioner will not raise grounds of invalidity or unpatentability with respect to the challenged patent under 35 U.S.C. 102 or 103 in any other proceeding.

(e) *Claims found valid in prior proceedings*. *Inter partes* review shall not be instituted or maintained if a challenged claim or an independent claim from which a challenged claim depends:

(1) *U.S. District Court Trial*—Was found not invalid under 35 U.S.C. 102 or 103 by a district court or jury following a bench trial or jury trial in a decision or verdict that has not been vacated or reversed in relevant part;

(2) *U.S. District Court Summary Judgment*—Was found not invalid by a district court in a summary judgement decision finding no dispute of material fact under 35 U.S.C. 102 or 103 that has not been vacated or reversed in relevant part;

(3) *U.S. International Trade Commission*—Was found not invalid under 35 U.S.C. 102 or 103 in initial or final determination of the U.S. International Trade Commission that has not been vacated or reversed in relevant part;

(4) *PTAB Final Written Decision*—Was found not unpatentable in a final written decision of the Board under 35 U.S.C. 318(a) or 328(a) that has not been vacated or reversed;

(5) *Ex Parte Reexamination*—Was found patentable in an office action or decision by the Board following a reexamination request filed under Chapter 30 of Title 35 United States Code by someone other than the patent owner, the patent owner's real party in interest or privy; or

(6) *Federal Circuit*—Was found unpatentable or invalid under 35 U.S.C. decision was reversed in relevant part by the U.S. Court of Appeals for the Federal Circuit.

(f) *Parallel Litigation—Inter partes* review shall not be instituted or maintained if, more likely than not, any of the following will occur, with respect to a challenged claim or an independent claim from which a challenged claim depends, before the due date for the final written decision pursuant to 35 U.S.C. 316(a)(11):

(1) *U.S. District Court*—A district court trial in which a party challenges the patent under 35 U.S.C. 102 or 103;

(2) *U.S. International Trade Commission*—an initial or final determination of the U.S. International Trade Commission with respect to 35 U.S.C. 102 or 103; or

(3) *PTAB Final Written Decision*—issuance of a final written decision by the Board under 35 U.S.C. 318(a) or 328(a).

(g) *Institution in extraordinary circumstances*. If a panel of the Board determines that extraordinary circumstances warrant institution notwithstanding paragraphs (d), (e), or (f) the Panel shall refer to matter to the Director who may personally institute inter partes review. Extraordinary circumstances may include a determination by the Director that the prior challenge barring institution was initiated in bad faith, *e.g.*, for the purpose of preventing future challenges, or

that the prior challenge is rendered irrelevant in view of a substantial change in a statute or precedent of the Supreme Court of the United States. Unusual and extraordinary circumstances shall not include new or additional prior art, new expert testimony, new case law (except as provided above) or new legal argument, or a prior challenger's failure to appeal. Neither the Director nor the Board shall waive the requirements of paragraphs (d), (e), or (f) of this section except as provided in this paragraph. Frivolous or abusive petitions under this paragraph may be appropriately sanctioned, including with an award of attorneys' fees.